## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BRANDY NEWBURY** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:18-cv-98** |
| | § | |
| | § | |
| | § | |
| **CITY OF WINDCREST, TEXAS** | § | |
| **Defendant.** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Comes Now Brandy Newbury ("Newbury" or "Plaintiff"), and complains of Defendant the City of Windcrest ("Windcrest" or Defendant), alleging and stating her claims for relief as follows.

### I.
### JURISDICTION AND VENUE

1.      The Court has jurisdiction to hear the merits of Newbury's claims under 42 U.S.C. §1983 as they arise under federal statutes, specifically the Civil Rights Act of 1871, and Title VII.

2.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. 1367.

3.      All the acts alleged herein occurred in Bexar County, Texas.

4.      Venue in this district and division is proper under 28 U.S.C. § 1391(b)(2).

5.      At the time of filing, damages are within the jurisdictional limits of the court.

### II.
### THE PARTIES

6.      Plaintiff Brandy Newbury is a Citizen of the United States and the State of Texas who presently resides in San Antonio, Bexar County, Texas.

7.      Defendant City of Windcrest, Texas is a Home Rule City lying and situated in

Bexar County, Texas within the San Antonio Division of the Western District of Texas and created and existing pursuant to the Constitution and laws of the state of Texas. Defendant may be served with process by serving its Mayor, Dan Reese, at City of Windcrest, 8601 Midcrown, Windcrest, Texas 78239.

## III.
## MISNOMER / MISIDENTIFICATION

8.      In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein.  Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## FACTUAL BACKGROUND

9.      Brandy Newbury was hired by Defendant as a Police Officer on or about February 29, 2016 and was sworn in on March 1, 2016.

10.      Almost immediately, Ms. Newbury was targeted by another officer, B. Jaime.  B. Jaime would stare at Ms. Newbury and would look at her body up and down.  Officer B. Jaime would also call attention to herself before staring at Ms. Newbury.

11.      This behavior would happen in front of other officers including Ptl M. Hernandez, Cpl Thuleen, Ptl, J. Sammon, Ptl A. Espinoza, Ptl, J. Dehoyos, Cpl Facklemann, and Ptl S. Pena.

12.      As a newly hired officer, Ms. Newbury would be assigned a Field Training Officer or FTO, who was responsible for observing and evaluating her work.

13.      On or about April 12, 2016, Ms. Newbury was temporarily assigned to have B. Jaime serve as her FTO.

14.      On or about April 16, 2016, Ms. Newbury was screamed at in front of other officers by Officer B. Jaime.  B. Jaime stood only inches from Ms. Newbury and screamed at her that she

2

had to make changes to a report.  Ms. Newbury reported this incident to her Field Training Officer (FTO) Coordinator, Officer Hernandez.

15.     She sent an email to Officer Hernandez on April 17, 2016, requesting a meeting to discuss what happened with Officer Hernandez and Officer Pena.  Officer Pena was present and confirmed what Officer Jaime had done.

16.     On or about April 21, 2016, there was an incident where Sgt. Hernadnez and Officer Jaime were recording Ms. Newbury.  Sgt. Hernandez held a cell phone with both hands, pointed it at Ms. Newbury's face, and began asking her questions including "where is your FTO?" "Why are you out here without him?" What are you doing?"  Ms. Newbury reported the incident to Ptl T. Lindsey.

17.     On or about July 6, 2016, Ms. Newbury turned in her FTO evaluation of Officer Jaime.

18.     Four days later, on or about July 10, 2016 Ms. Newbury filed a grievance against Officer Jaime and complained about sex discrimination.  Specifically, Ms. Newbury complained that Officer Jaime would treat her and other women officers more harshly than male officers.

19.     Ms. Newbury reported that Officer Jaime would speak to her in a rude and belittling manner, including in front of other officers, would refuse to shake Ms. Newbury's hand, and would purposefully ignore her in front of others.  In contrast, Officer Jaime would not act this way towards male officers.

20.     Officer Pena warned Ms. Newbury that by reporting Officer Jaime and making complaints that it would make things worse for her at the department.

21.     On July 12, 2016, Plaintiff was sent correspondence from the Police Chief Alan Ballew telling Ms. Newbury that her complaint would be investigated.

22.     On or about August 2, 2016, a report regarding the complaint was issued.

23.     As a new hire, department policy barred Ms. Newbury from working after hours side jobs during her probationary period.

24.     On or about October 31, 2016, Officer B. Torres told Ms. Newbury that Officer Grelle was following her and trying to catch her improperly working side jobs off duty.

25.     On or about November 1, 2016, Ms. Newbury made a complaint about Grelle following her and asked for an internal affairs investigation to take place.  Lt. Lee and Lt. Williams told her that an IA investigation would be opened.

26.     In November of 2016, Ms. Newbury was at home with her boyfriend having sexual intercourse when she observed a bright red light coming from her department issued WatchGuard VISTA body camera.  The red light being illuminated indicated that the system was recording.

27.     The next day Ms. Newbury discussed this issue with her partner at the time, Officer Ptl J. Dehoyos.

28.     After the discussion they approached Lt. Lee who was one of the system administrators for the body camera system and had access to all the recordings.

29.     Ms. Newbury and Officer Dehoyos asked Lt. Lee if they could leave their body cameras at the department when they were off duty.  Lt. Lee stated they could not do this and if they did, they would face discipline or possible termination.

30.     Shortly after that meeting, Lt. Lee issued an order to the shift Corporals to collect the USB cables from all of the officer's body cameras, which allowed the cameras to be connected to a computer so the contents could be viewed.

31.     Ms. Newbury also reported to Cpt. Thuleen that she believed her body camera had been remotely accessed.  After that, Ms. Newbury was locked out of being able to view the videos

4

from her camera after they were downloaded.  She also began to have issues synching her camera to her patrol unit, which would have also allowed her to see the recordings.

32.     On or about December 29, 2016, Ms. Newbury was informed that there had been a schedule change and that Officer Grelle, whom she had previously requested an internal affairs investigation on, was now her partner.

33.     Ms. Newbury contacted Lt. Lee to ask how she could be placed as Grelle's partner when there was an ongoing internal affairs investigation.  Lt. Lee told her there was no internal affairs investigation and that one would not take place.

34.     On or about January 15, 2017, Ms. Newbury complained to Corporal Davila about her body camera being remotely accessed.

35.     On or about January 26, 2017, Ms. Newbury was diagnosed with Anxiety.

36.     On January 27, 2017, Ms. Newbury turned in her resignation, informing the chief that she was resigning due to the hostile work environment she faced.

37.     Ultimately the discrimination, harassment, and retaliation faced by Ms. Newbury compelled her to resign her position, and constructively discharged her.

38.     Plaintiff filed her charge of discrimination on February 23, 2017.

**V.**
**FIRST CLAIM FOR RELIEF – SEX DISCRIMINATION AND RETALIATION UNDER TITLE VII AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT**

39.     Prior to her wrongful discharge, Plaintiff had faithfully served Defendant in her capacity as an employee and faithfully performed all duties expected of her.  The acts committed by the agents, servants and/or employees of Defendant in discriminating against, harassing, retaliating against, and wrongfully terminating the Plaintiff for reporting complaints about sexual harassment committed by Defendant all constitute violations of Tex. Labor Code § 21.051, et seq.,

including §§ 21.051, 21.055, 21.056, 21.125, and any other applicable provisions.

40.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff because she is a female. Plaintiff alleges that Defendant discriminated against her based on her gender and engaged in sexual harassment.  When Plaintiff complained of the sexual harassment to supervisors, no action was taken against those who had harassed her. In fact, the situation worsened as officers were allowed to retaliate against Ms. Newbury for having brought her complaints.

41.     Defendant discriminated against Plaintiff in connection with compensation, terms, conditions and privileges of employment in violation of Chapter 21 of the Texas Labor Code and Title VII.

42.     Defendant sexually harassed Plaintiff, as described above, in violation of her rights under Chapter 21 of the Texas Labor Code and Title VII.  Defendant knew or should have known of the harassment, yet failed to take proper remedial action.  The sexual harassment and retaliation were both severe and pervasive and rise to the level of a hostile work environment.

43.      Plaintiff alleges that Defendant both sexually harassed and discriminated against Plaintiff on the basis of sex with malice or with reckless indifference to the protected rights of Plaintiff.

44.     The unlawful employment practices of Defendant, by and through Defendant's agents, had a disparate and adverse impact on Plaintiff because Plaintiff is a female; Such employment practices were not consistent with business necessity.

45.     Plaintiff further brings her claims pursuant to Section 21.055 of the Texas Labor Code, in that after Defendant was notified by Plaintiff of offending actions, Defendant allowed a pattern of retaliatory acts to be taken against Ms. Newbury.

46.     Defendant was negligent in failing to address the sexual harassment and retaliation in the workplace.

47.     Plaintiff belonged to a protected class based on sex.  Plaintiff was qualified for her position.

48.     There is an inference that the adverse actions were taken because of discrimination.

49.     Further, others outside of her protected class were treated more favorably.

## VI.
## THRID CLAIM FOR RELIEF – VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871 – SECTION 1983

50.     The Fourth and Fourteenth Amendments of the United States Constitution guarantee the Plaintiff the right from unreasonable intrusion into their person where there is a legitimate expectation of privacy.

51.     Defendant, through the conduct of its Chief of Police and Lt. Lee had complete control and system access of the recording equipment and knowingly and intentionally permitted the recording of the Plaintiff during personal and private (non-police) matters without consent.

52.     This decision to knowingly and willfully allow the unauthorized and prohibited recordings of Officers where a reasonable expectation of privacy existed constitutes a policy and practice of the Defendant within the meaning of the Civil Rights Act of 1871, 42 U.S.C. § 1983, in that, the daily unauthorized and unconsented recordings instituted by the Chief of Police and Lt. Lee through the use of the body camera system which was purchased and installed by the Defendant.

53.     Furthermore, this pattern practice of the Defendant was in violation of Texas Penal Code §21.15 which makes it a felony to videotape an individuals clothed or naked genitals, pubic area, anus, buttocks, or female breast area without that person's consent and with the intent to

invade their privacy, as was done to Plaintiff.

## VII.
## FOURTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54.     Defendant made the decision to acquire body cameras from a third party vendor and implement them for use by the officers.  The Plaintiff was not involved in any aspect of selecting the body camera vendor, purchasing the cameras, nor did Plaintiff have system administrator access to the system.  The Defendant, through the conduct of its Chief of Police was responsible for implementing, installing, maintaining, controlling, and training the Officers on functionality and protocol for using the cameras.

55.     The Plaintiff relied on the representations made by the Defendant through its officers/employees with respect to the features and functionality of the cameras and based on these representations, the Officers fully believed their right to privacy was protected when they were engaged in personal, private, non-police matters.

56.     The Defendant's Chief of Police and Lt. Lee were the only ones who had full system administrator access.  Therefore Defendant was aware of the unauthorized and unconsented video recordings taking place.

57.     As a direct and proximate result of the wrongful conduct in permitting the unconsented video recordings, the Plaintiff has been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation, feeling of being violated, and injury to her right to privacy.

## VIII.
## JURY DEMAND

58.     Plaintiff demands a trial by Jury.

## PRAYER FOR RELIEF

8

WHEREFORE, Newbury requests that Defendant be summoned to appear and answer, and that on final trial, judgment be granted against Defendant awarding Newbury the following:

a)  Back pay and front pay, including but not limited to lost wages and other employment benefits;

b)  Promotions and benefits she would have received but for the unlawful discrimination

c)  Compensatory damages;

d)  Prejudgment and post-judgment interest, in the maximum amount allowed by law;

e)  Attorneys' fees, expert fees, and costs of suit; and

f)  Such other and further legal and equitable relief to which Plaintiff may be justly entitled.

**Respectfully Submitted,**

**PONCIO LAW OFFICES, P.C.**
**A Professional Corporation**
**5410 Fredericksburg Rd., Suite 109**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile:  (210) 212-5880**
**E mail:salaw@msn.com**

**By:  _/s/ Alan Braun_**
**ADAM PONCIO**
**Attorney In Charge**
**State Bar No. 16109800**
**THOMAS N. CAMMACK, III**
**State Bar No. 24073762**
**ALAN BRAUN**
**State Bar No. 24054488**
**ATTORNEYS FOR PLAINTIFF**