IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**BRANDY NEWBURY**
*Plaintiff*

SA-18-CV-00098-JKP

-vs-

**CITY OF WINDCREST**
*Defendant*

# MEMORANDUM OPINION and ORDER GRANTING CITY OF WINDCREST'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant City of Windcrest's (hereinafter "The City") Motion for Summary Judgment. The City seeks summary judgment on Plaintiff Brandy Newbury's causes of action of sexual harassment, gender discrimination, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code, Newbury's cause of action asserting violation of 42 U.S.C. § 1983, and Newbury's cause of action for Intentional Infliction of Emotional Distress. ECF No. 28. Newbury responded to the motion. ECF No. 32. After due consideration, the Court concludes the City's Motion for Summary Judgment shall be GRANTED on all causes of action.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises out of Newbury's employment with the Windcrest Police Department. The parties filed a Stipulation setting forth the basic underlying undisputed facts that Newbury began working for the Windcrest Police Department as a police officer on March 1, 2016. In this position, Newbury was an at will employee with a one-year probationary period. ECF No. 26.

Pursuant to the facts asserted in her Original Complaint, this action arises from an incident that occurred on April 16, 2016, between Newbury and Officer Blanca Jaime, another

female officer who did not have supervisory authority over Newbury. ECF No. 1. Newbury asserts she and Officer Jamie had a disagreement regarding the grammar Newbury used in an incident report. *Id*. As a result of the disagreement and Newbury's refusal to change the grammar in her incident report, Officer Jaime screamed at her and humiliated her in front of colleagues. *Id*. The exchange resulted in Newbury feeling compelled to change her incident report to satisfy Officer Jaime. *Id*. Newbury asserts in her Original Complaint that, again, on April 21, 2016, Officer Jaime and Officer Hernandez humiliated her by holding a cell phone in her face and asked numerous questions regarding her presence in the field without her Field Training Officer. *Id*.

On July 10, 2016[1], Newbury filed a formal internal grievance against Officer Jaime. *Id*.; ECF No. 1. Newbury cited these two incidents, as well as allegations that from the beginning of her employment, Officer Jaime was rude and dismissive to her, would ignore her and was jealous of Newbury's assignment as a trainee with Officer Hernandez. *See* ECF No. 1. Newbury alleged Officer Jaime discriminated against her based upon gender because Officer Jaime did not treat other male officers in this manner. *See id*.

Because Newbury's formal complaint asserted gender discrimination, the City retained the law firm of Holland & Holland to conduct an external investigation of Newbury's allegations against Officer Jaime. ECF Nos. 1, 26. On August 2, 2016, Attorney Inez McBride issued a report containing her findings and the conclusion that any allegations of gender-based, same-sex discrimination were unsubstantiated. ECF Nos. 1, 26. The parties stipulate Newbury continued her employment with the Windcrest Police Department until January 27, 2017, when she resigned. ECF No. 26.

---

[1] Although the stipulated facts state this internal grievance was filed on April 16, 2016, the summary judgment evidence shows it was filed on July 10, 2016. *See* ECF Nos. 1, 26, 35-7, 36-2, 36-3.

Newbury filed this action asserting causes of action for gender discrimination, sexual harassment which created a hostile work environment, retaliation, constructive discharge, intentional infliction of emotional distress and violation of her Fourth and Fourteen Amendment right to privacy in violation of 42 U.S.C. § 1983. Newbury supports her causes of action with these same allegations pertaining to incidents with Officer Jaime. In addition, Newbury asserts that on November 1, 2016, she made a complaint and requested an internal investigation alleging Officer Grelle was following her to catch her working improper off-duty side jobs. ECF No. 1. Lt. Lee told her an internal investigation would be opened; however, on December 29, 2016, Newbury was assigned Officer Grelle as a partner. *Id*. Upon her complaint to Lt. Lee regarding this assignment, he told Newbury that an internal investigation had not been conducted based upon those allegations, and one would not be. *Id*.

Newbury filed this action on January 31, 2017, and the parties stipulate she exhausted her administrative remedies. ECF Nos. 1, 26. The matter is now before the Court on the City's Motion for Summary Judgment.

**STANDARD OF REVIEW**

A court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material," and a fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact becomes "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Because there must be a genuine dispute

---

[2] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims." *Armas v. St. Augustine Old Roman Catholic Church*, No. 3:17-CV-2383-D, 2019 WL 2929616, at *2 (N.D. Tex. July 8, 2019) (citing *Celotex Corp.*, 477 U.S. at 325).

In determining the merits of a motion for summary judgment, a court must view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Further, a court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Anderson,* 477 U.S. at 254–55.

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). "Unsubstantiated

assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23.

## DISCUSSION

The City asserts it is entitled to summary judgment on all of Newbury's causes of action as a matter of law based upon the following grounds: (1) Newbury cannot establish a prima facie case of sexual harassment (hostile work environment) or gender discrimination in violation of Title VII because she cannot show Officer Jaime's or the City's actions were based upon Newbury's gender; (2) Newbury cannot establish a prima facie case of retaliation in violation of Title VII because she cannot show any causal connection between her protected activity and any alleged adverse action; (3) Newbury cannot establish a prima facie case to show she was constructively discharged because her allegations do not rise to the level of pervasiveness and severity to constitute or require her resignation; (4) Newbury cannot establish the City committed a constitutional violation to support her cause of action under 42 U.S.C § 1983; and (5) The City is immune from suit for Intentional Infliction of Emotional Distress.  ECF. No. 28.

## Burden of Proof

Title VII prohibits employers from intentionally discriminating against any individual with respect to compensation, terms, conditions or privileges of employment based on the individual's gender or other protected class. 42 U.S.C. § 2000e–2(a)(1); *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 651 (5th Cir. 2004). Title VII also prohibits employers from retaliating against an employee for engaging in protected conduct, such as filing a complaint regarding discrimination or sexual harassment. 42 U.S.C. § 2000e-3(a).

Intentional discrimination can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir. 2001). When, as in this case, there is no direct evidence of unlawful discrimination or retaliation, a plaintiff must prove any such causes of action using circumstantial (or indirect) evidence pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To survive a defendant's motion for summary judgment under the *McDonnell Douglas* framework, prior to the assignment of summary judgment burdens of proof, a plaintiff must, first, establish a prima facie case of the asserted discrimination and retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If satisfied, the plaintiff creates a presumption of intentional discrimination. *Id*. The burden, then, shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254–56 (1981). If the employer sustains its burden, the presumption of intentional discrimination dissipates, and the burden shifts back to the plaintiff. *McCoy*, 492 F.3d at 556. At this final stage, to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine dispute of material fact that either: (1) the employer's

proffered reason is not true but is instead a pretext for discrimination; or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408, 411-12 (5th Cir. 2007); *McCoy*, 492 F.3d at 556; *Williams v. Time Warner*, 98 F.3d 179, 181 (5th Cir. 1996).

Unsubstantiated assertions and conclusory allegations of discrimination are not competent summary judgment evidence, and therefore, are not sufficient to support a party's burden at any stage. Fed. R. Civ. P. 56(e); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); *Ragas*, 136 F.3d at 458.

**1. Sexual Harassment**

Title VII's ban on intentionally discriminatory employment practices extends to gender-based discrimination that creates a hostile or abusive work environment, generally referred to as "sexual harassment". *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66 (1986); *Cherry v. Shaw Coastal, Inc.*, 668 F. 3d 182, 188 (5th Cir. 2012)(citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998)). An employer violates Title VII when the employer allows the workplace to be "permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). There are two broad categories of sexual harassment discriminatory practice: (1) quid pro quo; and (2) hostile work environment. *Giddens v. Cmty. Educ. Centers, Inc.*, 540 Fed. Appx. 381, 387 (5th Cir. 2013). If a plaintiff suffered a tangible employment action, the suit is a "quid pro quo" action. *Casiano v. AT & T Corp.,* 213 F.3d 278, 283–84 (5th Cir. 2000); *Giddens*, 540 Fed. Appx. at 387. If the plaintiff has not suffered a

tangible employment action, the suit is classified as a hostile work environment case. *Casiano v. AT & T Corp.,* 213 F.3d 278, 283–84 (5th Cir.2000); *Giddens*, 540 Fed. Appx. at 387.

Newbury stipulated she alleges only sexual harassment based on a hostile work environment theory. ECF No. 26. To establish a prima facie case of a hostile work environment, Newbury must demonstrate: (1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on gender; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the City knew or should have known of the harassment and failed to take prompt remedial action. *Havrill v. Westward Communications, L.L.C.*, 433 F. 3d 428, 434 (5th Cir. 2005); *see also Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162-63 (5th Cir. 2007). Under the second and third prongs, "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances are unwelcome." *Rodriguez v. City of Houston*, 250 F. Supp. 2d 691, 699 (S.D. Tex. 2003). Unwelcome sexual harassment is "conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." *Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir. 1986). Accordingly, a plaintiff asserting a hostile work environment claim must show she suffered (1) sexually discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions or employment and (4) create an abusive working environment. *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F. 3d 591, 593 (5th Cir. 1995).

Under the undisputed facts presented, Newbury cannot establish a prima facie case of hostile work environment based on sexual harassment. Newbury asserts only that Officer Jaime was rude and offensive based upon nonsexual comments and behavior. Newbury does not allege, and the summary judgment evidence does not reflect, any unwelcome sexual advances. Newbury

does not allege, and the summary judgment evidence does not show, any conduct of a sexual nature by Officer Jaime (or anyone else) that could have created a hostile work environment. For this reason, Newbury's cause of action asserting the City created a hostile working environment based upon sexual harassment must fail.

Because Newbury cannot establish a prima facie case based upon the undisputed facts, summary judgment on this cause of action in favor of the City is appropriate.

### 2. Constructive Discharge (Hostile Work Environment Sexual Harassment)

In her complaint and summary judgment response, Newbury ambiguously alleges her resignation was effectively a constructive discharge. Newbury's allegation can be interpreted in two ways: (1) as a form of a sexual harassment claim, in that the alleged hostile conduct created an intolerable working condition that compelled her to resign, and (2) as an essential element of a gender discrimination cause of action, in that, constructive discharge was an adverse employment action. To the extent Newbury asserts the first interpretation (constructive discharge as part of an independent sexual harassment cause of action), it will be analyzed here.

A resignation is actionable under Title VII only if the resignation qualifies as a constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). To prove a constructive discharge claim, a plaintiff must establish a greater degree of harassment than that required to prove any underlying hostile work environment claim. *Id.*; *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 480 (5th Cir. 2008).

Newbury's independent cause of action based upon constructive discharge fails for the same reason her sexual harassment cause of action fails. Based upon the undisputed facts, Newbury cannot establish a prima facie case of sexual harassment, and therefore cannot establish the heightened degree of harassment necessary to support a constructive discharge. Newbury

contends she resigned because she was repeatedly subjected to abusive taunts and rude behavior by Officer Jaime. These facts, without more, are insufficient to support a finding that a reasonable employee in Newbury's situation would have felt compelled to resign.

Because she cannot establish her initial burden to establish a prima facie case of constructive discharge under the first prong of *McDonnell Douglas* test, summary judgment in favor of the City is appropriate on any independent cause of action for constructive discharge based in sexual harassment in violation of Title VII.

### 3. Discrimination Based Upon Gender (Disparate Treatment)

To establish a prima facie case of gender discrimination, Newbury must prove: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the circumstances are such that an unlawful discriminatory reason for the adverse employment action can be inferred, *i.e.*, that she was "treated less favorably than those outside the protected class." *Okoye v. Univ. of Texas Houston Health Science Ctr*, 245 F. 3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris Cty*, 197 F. 3d 173, 184 (5th Cir. 1999).

Under the third prong, Newbury must show she suffered an adverse employment action. *Reznick v. Associated Orthopedics & Sports Medicine, P.A.*, 104 F. App'x 387, 391-92 (5th Cir. 2004); *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Based on the complaint and the undisputed facts, Newbury appears to assert she suffered an adverse employment action of being forced to resign, or constructively discharged. ECF Nos. 1, 26, 32.

An adverse employment action occurs when there is "a significant change in [Newbury's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Butler v. Ysleta*

*Indep. Sch. Dist.*, 161 F. 3d 263, 268 (5th Cir. 1998); *see Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 671 (S.D. Tex. 2001). Where, as here, an employee resigns, she may satisfy the discharge requirement by proving constructive discharge. *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir.1994).

To prove constructive discharge, a plaintiff must show their working conditions were so intolerable that a reasonable employee would feel compelled to resign. *Id.* at 297 n. 19; *see also Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997); *Landgraf v. USI Film Products*, 968 F. 2d 427, 429-30 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994). To determine whether a reasonable person would feel compelled to resign, a court must consider the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation; and (7) offers of early retirement on terms that would make the employee worse off. *Barrow,* 10 F.3d at 297; *Reznick*, 104 F. App'x at 392. These factors are considered "singly or in combination." [3] *Barrow,* 10 F.3d at 297; *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000). To establish constructive discharge as an adverse employment action, an employee must show a greater degree of harassment than what would be required to establish a hostile environment claim. *Brown v. Kinney Shoe Corp.*, 237 F.3d at 566. Discrimination alone, without aggravating factors, is insufficient to establish a claim of constructive discharge. *Jurgens v. E.E.O.C.,* 903 F.2d 386, 393, n.10 (5th Cir. 1990); *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005); *Boze v. Branstetter,* 912 F.2d 801, 805 (5th Cir. 1990);

---

[3] Proof is not required that the employer imposed intolerable working conditions with the specific intent to force the employee to resign. *Jurgens v. E.E.O.C.,* 903 F.2d 386, 390 (5th Cir. 1990)(citing *See Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 & n. 5 (5th Cir.1980)(acknowledging some other circuits endorse such a stricter standard); *see also Boze v. Branstetter*, 912 F.2d 801, 804 (5th Cir. 1990).

To support her claim she was constructively discharged, Newbury presents evidence which pertains only to the sixth factor: badgering, harassment, or humiliation. Specifically, Newbury asserts she felt compelled to resign based upon consistent badgering and humiliation by Officer Jaime. The underlying dispute between the two related, first, to a difference of opinion about writing a police report. Newbury asserts "Ptl Jaime screamed at me to make corrections on a report," and Officer Jaime "came from across the room, screamed inches from face, and I believe if I had not walked out of the room she would have physically attacked me." Plaintiff's Response to Interrogatory No. 17. Newbury also cites other incidents with Officer Jaime that she asserts collectively contributed to her decision to resign.

After carefully scrutinizing the record and considering all the evidence, the Court finds no evidence to suggest Officer Jaime or others discriminated against Newbury. Newbury presents only the conclusory assertion that she was a victim of gender discrimination. All of the cited incidents, viewed even in the light most favorable to Newbury, amount to nothing more than rude and unprofessional behavior. The summary judgment evidence reflects Newbury had difficult experiences with Officer Jaime and other colleagues during her employment as a Windcrest police officer. However, while Newbury asserts her working conditions were intolerable due to Officer Jaime's rude and humiliating behavior, these incidents do not rise to the level of pervasiveness necessary to support a finding of constructive discharge.

These facts, without more, are insufficient for a finding that a reasonable employee in Newbury's position would have felt compelled to resign. Under these facts, Newbury cannot establish her resignation was justified by working conditions that had become so intolerable that no reasonable person could have worked there under those conditions. Therefore, Newbury cannot satisfy her burden to show she was constructively discharged.

Further, with regard to the fourth prong, although Newbury seeks to characterize her complaint against Officer Jaime as one of gender discrimination, their underlying dispute related to a difference of opinion about writing a police report. While Newbury alleges Officer Jaime was only rude to her and other females, Newbury presents only conjecture and fails to provide any evidence which could satisfy her burden to show Officer Jaime's mistreatment was focused on Newbury because she is female.

For these reasons, Newbury cannot satisfy her prima facie burden of proof to show gender discrimination. Accordingly, the Court finds the City is entitled to summary judgment on Newbury's gender discrimination (disparate treatment) cause of action.

4. **Retaliation**

To establish a prima facie case of retaliation in violation of Title VII, Newbury must present evidence showing: (1) she engaged in an activity protected by Title VII; (2) the City carried out an adverse employment action; and (3) a causal nexus exists between her protected activity and the City's adverse action. *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F. 3d 164, 167 (5th Cir. 1999). The City concedes Newbury engaged in protected activity when she made her complaint against Officer Jaime. ECF No. 28, p. 19. Therefore, Newbury satisfied the first prong of her prima facie case.

Newbury presented summary judgment evidence she resigned on January 27, 2017. ECF No. 20. In her resignation letter (email), Newbury stated she made her complaint against Officer Jaime on July 10, 2016. Newbury's Ex. 45; *see* ECF Nos. 35-7, 36-2 and 36-3. Newbury identifies five incidents that occurred before she made her July 10, 2016 complaint about Officer Jaime which she believes supports her retaliation claim. *See* Newbury's Response to Interrogatory No. 20. (No ECF Number).

The initial incident between Newbury and Officer Jaime occurred on April 12, 2016. ECF 33-4. According to Newbury, Officer Pena subsequently told her to follow the chain of command and report the dispute to Officer Hernandez (the Field Training Officer Coordinator), which she did on that same date. *Id*. On April 17, 2016, Newbury met with Officer Pena regarding her dispute with Officer Jaime. *Id*. Newbury alleges Officer Pena told her during this meeting, "this may be indicated on my evaluations as not being able to handle stressful situations." *Id*. Newbury alleges Officer Pena stated, "don't you realize that by reporting what occurred between you and Officer Jaime that you are making things worse for you here at this department." *Id*. Newbury also alleges Officer Pena retracted his prior statement and "that none of this would be reflected on my evaluations." *Id*.

Even viewing the above conversation in the light most favorable to Newbury, this conversation with Officer Pena cannot support Newbury's prima facie burden of proof to show retaliation against her for reporting the dispute she had with Officer Jaime. Accepting Newbury's account of Officer Pena's comments as true, the subject of the conversation is Newbury's belief that Officer Jaime treated her harshly in counseling her about the corrections to her report.

Newbury filed a formal complaint with Chief Ballew on July 10, 2016. Upon receipt of her complaint, the City retained an outside law firm to investigate the claim. The Court finds the pre-complaint incidents (prior to July 10, 2016) do not serve as the basis of Newbury's retaliation claim. Assuming arguendo that Newbury made a formal complaint on April 12, 2016 (to Officer Hernandez), Newbury does not establish a causal link between the protected activity and any alleged adverse action.

The rest of Newbury's complaints are conclusory and there are no underlying facts to support them. The foundation of Newbury's cause of action is she was treated rudely by Officer

Jaime and others, she reported the offensive behavior, and was forced to resign because her working environment became unbearable. Aside from conclusory allegations, Newbury presented no summary judgment evidence to substantiate these assertions. For this reason, she cannot establish her prima facie case of retaliation. *Heinsohn*, 832 F.3d at 234; *see also Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 242 (5th Cir. 1993).

Moreover, as discussed previously, Newbury cannot satisfy the second prong of her prima facie burden, that is, she cannot show she suffered an adverse employment action. Constructive discharge can be an adverse employment action in the context of a retaliation claim. *Harvill*, 433 F.3d at 439-40. However, "[d]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge ...." *Brown v. Kinney Shoe Corp.*, 237 F.3d at 566. To satisfy this prong of her burden of proof, Newbury "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id.*; *Landgraf,* 968 F.2d at 430.

Similar to her gender discrimination cause of action, even if we were to accept Newbury's allegations as true, Newbury failed to assert or provide any summary judgment evidence of any aggravating factors that would render any harassment so intolerable that a reasonable employee would feel compelled to resign. *See Brown v. Kinney Shoe Corp.*, 237 F.3d at 566; *Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir. 1997).

For these reasons, Newbury cannot satisfy her prima facie burden of proof, and the City is entitled to summary judgment on her retaliation claim.

5. **Texas Commission on Human Rights Act**

Newbury also brings causes of action under the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code § 21.051, *et seq.*; ECF No. 1, p.6. "The [Texas] legislature

drafted the TCHRA to 'correlate state law with federal law in the area of discrimination in employment.'" *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 530 (S.D. Tex. 1999) (quoting *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991). The TCHRA's purpose is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments (42 U.S.C. Section 2000e *et seq*.)." *Martin v. Kroger Co.*, 65 F. Supp. 2d at 530 (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)). "Because the TCHRA is the state counterpart to Title VII, the same standards apply" and "the TCHRA is interpreted in a manner consistent with federal laws prohibiting employment discrimination." *Martin v. Kroger Co.*, 65 F. Supp. 2d at 530 (quoting *Allison v. City of Fort Worth*, 60 F. Supp. 2d 589, 593 (N.D. Tex. 1999) and *Specialty Retailers, Inc.*, 933 S.W.2d at 492). Therefore, the analysis applied to Newbury's causes of action brought under the TCHRA is identical to the analysis applied to her claims brought under Title VII. *See Martin v. Kroger Co.*, 65 F. Supp. 2d at 530.

Newbury has not articulated how the analysis under the TCHRA differs in any way from her federal claims brought under Title VII. Therefore, summary judgment in favor of the City is appropriate as to Newbury's TCHRA state-law claims. *See Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 497 (M.D. La. 2012).

6. **Intentional Infliction of Emotional Distress**

Newbury alleges in her Original Complaint her co-workers' conduct, specifically Officers Jaime and Grelle's, was so egregious that it created "severe emotional distress." Based upon this alleged conduct, Newbury asserts a cause of action for intentional infliction of emotional distress against the City.

In Texas, a cause of action asserting intentional infliction of emotional distress is an intentional tort. *Twyman v. Twyman,* 855 S.W.2d 619 (Tex. 1993); *Univ. of Texas Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App. 1999)(citations omitted). Under Texas law, a governmental unit is immune from tort liability unless the Legislature has waived immunity. *See Dallas Cty Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex. 1998). Because the Texas Tort Claims Act ("the Tort Claims Act") provides a limited waiver of immunity for certain suits against governmental entities, this Court must determine whether the State of Texas waived immunity pertaining to this intentional tort. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008)(citation omitted).

The Texas Tort Claims Act explicitly states it does not extend its limited waiver of immunity to claims "arising out of assault, battery, false imprisonment, *or any other intentional tort.*" Tex. Civ. Prac. & Rem. Code § 101.057 (emphasis added). Instead, "[t]he Texas Tort Claims Act provides sovereign immunity exists for intentional torts." *Hohman,* 6 S.W.3d at 777. Because intentional infliction of emotion distress is an intentional tort, the City is immune from suit and is entitled to summary judgment as a matter of law. *Id.*; *Alcala v. Texas Webb Cty.*, 620 F. Supp. 2d 795, 801–02 (S.D. Tex. 2009)

Therefore, the City's motion for summary judgment on Newbury's intentional infliction of emotional distress cause of action is GRANTED.

7. **Section 1983 Claim**

Newbury asserts a cause of action for invasion of her personal privacy in violation of her Fourth and Fourteenth Amendment rights under the United States Constitution, with enforcement permitted under 42 U.S.C. § 1983. As basis for this cause of action, Newbury contends the City, through the conduct of its Police chief and Lt. Lee knowingly and intentionally activated her

department-issued body camera to record her while she was home and off duty. Newbury alleges the recordings captured her while she was nude.

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-694, (1978). A governmental entity cannot be liable for any alleged civil rights violations under a theory of respondeat superior or vicarious liability. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. at 403; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Monell,* 436 U.S. at 691–94. In addition, a municipality may not be held liable under Section 1983 solely because it employs a tortfeasor. *Monell,* 436 U.S. at 690.

Only when the execution of the government's policy or custom inflicts the injury may a governmental entity be held liable under section 1983. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. at 403; *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215–16 (5th Cir. 1998). Thus, a municipality can be liable for the acts of its officials under section 1983 in two circumstances: first, a municipality's final policymakers are held effectively to have made policy or condoned the creation of a custom by knowingly ratifying the unconstitutional or illegal actions of subordinate officers or employees; and, second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved. *See Turner v. Upton Cty,* 915 F.2d 133, 136 (5th Cir. 1990), *cert. denied,* 498 U.S. 1069 (1991).

Thus, to succeed on a cause of action against a governmental entity under § 1983, a plaintiff must identify the policy, connect the policy to the governmental entity itself, and show

that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). A plaintiff must establish that the governmental entity through its deliberate conduct was the "moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan Cty v. Brown,* 520 U.S. at 404; *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 724–25 (N.D. Tex. 2017).

Newbury does not allege in her complaint, nor does she present summary judgment evidence which would show, the alleged violations of her rights to privacy were caused by the City's policy or enforcement of the City's policy. In fact, Newbury admits the City has a policy prohibiting the conduct she alleges violated her constitutional privacy rights. The undisputed facts show the City has an established policy against use of body cam or recording while off duty. Therefore, the City is entitled to summary judgment on this cause of action as a matter of law.

Further, Newbury's allegations of violations of her right to privacy cannot survive summary judgment because they are based upon conclusory allegations and conjecture. Newbury admits she has never seen any recorded footage, but instead bases this cause of action on her belief that she saw the red light on her camera flashing, which ordinarily indicates it is recording. The summary judgment evidence presented establishes that the subject camera cannot be activated remotely as Newbury alleges. Stip. Ex. 3, Section 504.

In her response, Newbury reiterates the same conclusory allegations in her complaint, and produces no evidence which would raise a genuine issue of material fact regarding the veracity of her allegation that her body camera was activated remotely or whether any video footage of her while she was at home exists.

For these reasons, the City's motion for summary judgment on Newbury's cause of action for violation of her constitutional right to privacy is GRANTED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the City of Windcrest's Motion for Summary Judgment on all of Newbury's causes of action.

It is so ORDERED.
SIGNED this 7th day of January, 2020.

*/s/ Jason Pulliam*
JASON PULLIAM
UNITED STATES DISTRICT JUDGE